UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| BRENDA SEARS ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Case No. 1:10-CV-207 |
| v. ) | |
| ) | Chief Judge Curtis L. Collier |
| BRADLEY COUNTY GOVERNMENT, *et al.* ) | |
| ) | |
| Defendants. ) | |

**M E M O R A N D U M**

Before the Court is a motion for summary judgment filed by Defendants Bradley County Government ("Bradley County" or "the County"), Sheriff Tim Gobble ("Sheriff Gobble"), and Sergeant J. F. Brown ("Sergeant Brown," collectively, "Defendants") (Court File No. 10). Plaintiff Brenda Sears has responded (Court File No. 17), and Defendants have replied (Court File No. 18). For the following reasons, the Court will **GRANT IN PART** the motion for summary judgment (Court File No. 10).

**I.      FACTS**

Plaintiff is a disabled individual who suffers from a seizure disorder and requires the assistance of a service animal – a dog named O'Neal. On August 11, 2009, Plaintiff and O'Neal went to the Bradley County Criminal Justice Center because Plaintiff was to testify as a witness for a friend's son. Sergeant Brown was operating the metal detector and security check at the entrance to the courthouse. The courthouse had a general rule against allowing animals into the courthouse (Court File No. 12, ¶ 3).

As Plaintiff approached the security checkpoint, Sergeant Brown informed her dogs were not allowed in the courtroom. Plaintiff informed Sergeant Brown her dog was a service animal. Sergeant Brown, who testifies he had not experienced a service animal prior to this date (*id*. at ¶ 5), told Plaintiff he would need to obtain clearance from Judge Randolph. Sergeant Brown asked Plaintiff what the nature of her disability was, and she told him she had a seizure disorder. Plaintiff's husband, who was accompanying her, gave Sergeant Brown some papers explaining what a service animal is and how they are required to be allowed in public places (*id*. at ¶ 6).

Approximately 20 minutes later, which Sergeant Brown claims was the moment of earliest convenience, Sergeant Brown spoke with Judge Randolph's court officer about the situation, and showed him the papers explaining service animals. As it was almost lunch time, Judge Randolph said he would look at the papers after lunch. During lunch, the doors to the courtroom were locked (*id*. at ¶ 8). Plaintiff had to wait standing up, as there was no chair for her to use. Just before court resumed after the lunch break, Judge Randolph's court officer told Plaintiff that Judge Randolph would allow the animal into the courtroom. Plaintiff and O'Neal were granted entrance to the courtroom approximately an hour and forty-five minutes after Plaintiff arrived at the courthouse (Court File No. 17-1, ¶¶ 7, 16). Plaintiff alleges that during her wait, Sergeant Brown refused to allow her to use the courthouse restroom accompanied by O'Neal. Plaintiff had to go to a Taco Bell restaurant to use the restroom.

Prior to the incident with Plaintiff, Bradley County had received no reports of disabled individuals with service animals being denied entrance into courthouses (Court File No. 13, ¶ 3). Since the incident, Bradley County has adopted a policy and held a training session addressing the needs of disabled individuals with service animals (*id*. at ¶¶ 5-11). The policy provides for

2

allowance of service animals, and is displayed in conspicuous areas of public buildings in Bradley County (*id.* at ¶¶ 10-11).

Plaintiff has sued Defendants on a number of claims. She alleges: (1) a violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* by all Defendants; (2) a violation of 42 U.S.C. § 1983 vis-a-vis the Fourteenth Amendment's Due Process and Equal Protection clauses by all Defendants; and (3) various state law torts, including negligence and negligence *per se* by all Defendants, and invasion of privacy and infliction of emotional distress by Sergeant Brown. Defendants have moved for summary judgment on all claims.

## II. STANDARD OF REVIEW

Summary judgment is proper if the movant shows, based on the materials in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). First, the moving party must demonstrate no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based solely on its allegations, but must submit significant probative evidence to support its claims. *Celotex*, 477 U.S. at 324; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Should the non-movant fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C.*

3

*Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

### III.   ANALYSIS

#### A.  ADA Claim

Plaintiff's Complaint alleges violations of Title II of the ADA by all Defendants.[1] She seeks compensatory damages.[2] As a threshold matter, it is apparent the ADA claim against Sergeant Brown in his individual capacity must be dismissed, since "there is no individual liability under Title II of the ADA." *Sagan v. Sumner Cnty. Bd. of Educ.*, 726 F. Supp. 2d 868, 875 (M.D. Tenn. 2010) (citing *Carten v. Kent State Univ.*, 282 F.3d 391, 396-97 (6th Cir. 2002)). However, the ADA claims against the County and Sergeant Brown in his official capacity are properly brought.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason

---

[1] In her response brief, Plaintiff concedes Sheriff Gobble is entitled to summary judgment on all claims and should be dismissed. Accordingly, the Court will **GRANT** summary judgment with respect to all federal claims against Sheriff Gobble, and will exclude Sheriff Gobble from all further analysis.

[2] Although Plaintiff's Complaint also seeks injunctive relief, her response brief concedes injunctive relief is improper. Accordingly, the Court will **GRANT** summary judgment for Defendants on the ADA claim insofar as it seeks injunctive relief.

4

of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To recover compensatory damages under Title II of the ADA, a plaintiff must show: "(1) she has a disability; (2) she is otherwise qualified; and (3) she is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of her disability." *Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003). Additionally, "[c]ompensatory damages may be recovered under the ADA only if the plaintiffs prove intentional discrimination." *Tucker v. Tennessee*, 443 F. Supp. 2d 971, 973 (W.D. Tenn. 2006). "Further, the plaintiff must show that the discrimination was intentionally directed toward him or her *in particular*." *Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir. 2008) (emphasis added).

Failure to supervise is not a viable theory for recovery of compensatory damages in a Title II ADA claim, since such failure is necessarily not directed at a particular disabled individual. *See Dillery v. City of Sandusky*, 398 F.3d 562, 568 (6th Cir. 2005) ("Acts and omissions which have a disparate impact on disabled persons in general are not specific acts of intentional discrimination against the plaintiff in particular.") (quotation omitted); *see also Scozzari v. City of Clare*, 723 F. Supp. 2d 945, 973 (E.D. Mich. 2010) (recounting how the court earlier "denied Plaintiff leave to amend the complaint to allege a claim based on the City's failure to train its officers under the ADA because pursuing such a claim would be futile").

Here, Defendants argue Plaintiff cannot show she was intentionally discriminated against. First, any failure by the County to train its officers, including Sergeant Brown, was not a specific act of intentional discrimination against Plaintiff herself, and thus cannot support a claim for

5

compensatory damages under the ADA against the County. Second, Defendants claim Sergeant Brown's conduct towards Plaintiff was not motivated by discriminatory intent but his genuine bewilderment at how to handle service animals. Moreover, Sergeant Brown's efforts to seek approval from Judge Randolph, including his forwarding of the papers provided by Plaintiff's husband to Judge Randolph's court officer, indicate he was not attempting to discriminate against Plaintiff.

Plaintiff, for her part, does not address Defendants' argument that the County's failure to train cannot constitute intentional discrimination against Plaintiff in particular, and she devotes only one sentence to rebutting the argument Sergeant Brown did not intentionally discriminate against Plaintiff: she states the actions of Sergeant Brown "show[] intent on the part of the department and Brown to prevent plaintiff from entry into the courthouse" (Court File No. 17, p. 5).

Plaintiff's argument misconstrues what the word "intentional" means when it is said a plaintiff must prove intentional discrimination. *See Tucker*, 539 F.3d at 532. Of course Sergeant Brown "intended" to prevent Plaintiff from entry into the courthouse until he got clearance from Judge Randolph. However, it is not enough for a plaintiff to show a defendant acted voluntarily in performing some action affecting a disabled person, such as denying entry into a building. Indeed, such an interpretation would have the absurd result of classing as "intentional discrimination" an officer's *intentional* – that is, non-accidental or involuntary – denial of entry to an explosive-vest-wearing individual who happened to also be disabled.

Rather, the only plausible interpretation of the requirement that a "plaintiff [] show that the discrimination was *intentionally* directed" toward her, *Tucker*, 539 F.3d at 532, is that she must show the defendant actually intended to *discriminate* against her on account of her disability, rather than

6

having some other benign or non-discriminatory motive. *See Wilson v. Blackman Charter Twp.*, No. 09-10159, 2010 WL 1923794, *8 (E.D. Mich. May 12, 2010) ("[Plaintiff's] 'intentional discrimination' theory requires a showing that Defendants' allegedly discriminatory actions were motivated by his disability.). Plaintiff's response brief, insofar as it simply states the obvious point that Sergeant Brown intended to delay Plaintiff's entry to the building until he received clearance that the dog could enter, is wholly unresponsive to Defendants' argument Sergeant Brown did not act thusly out of any intent to discriminate against Plaintiff on account of her disability. Defendant does not contest Sergeant Brown thought animals were not allowed in the courthouse, that Sergeant Brown brought Plaintiff's papers regarding service animals to Judge Randolph's court officer, or that Sergeant Brown sought and ultimately obtained clearance from Judge Randolph to allow the dog into the courthouse. These facts, even viewed in the light most favorable to Plaintiff, do not raise a genuine question of fact as to whether Sergeant Brown intentionally discriminated against Plaintiff because of her disability.

Plaintiff cannot show the County intentionally discriminated against her, inasmuch as failure to supervise is not a valid theory of recovery in an ADA case. *See Dillery*, 398 F.3d at 568. Additionally, the facts do not support an inference Sergeant Brown intentionally discriminated against Plaintiff on account of her disability. Accordingly, Defendants are entitled to summary judgment on Plaintiff's ADA claim as a matter of law.

**B. § 1983 Claims**

Plaintiff's complaint alleges § 1983 violations of her Fourteenth Amendment rights by Sergeant Brown and the County. Although the response brief does not develop the theory of these claims, the Court takes Plaintiff to be arguing she was deprived – without due process and equal

7

protection of the laws – of her right to physically access the court.

To state a general claim under § 1983, a plaintiff must set forth "facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). Similarly, a suit against a municipality involves a two-prong inquiry. *Cash v. Hamilton Cnty. Dep't of Adult Prob.*, 388 F.3d 539, 542 (6th Cir. 2004). The court must determine: 1) whether the plaintiff has been deprived of a constitutional right; and 2) whether the municipality is responsible for the violation. *Id*.

A municipality cannot be liable under a *respondeat superior* theory for § 1983 violations. *Id*. Rather, municipalities are liable when they "have caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Id*. (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988)). Additionally, even absent a policy "officially adopted" by a municipality's officers, a § 1983 plaintiff "may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). A plaintiff bears the burden of showing "that the unconstitutional policy or custom existed, that the policy or custom was connected to the [municipality], and that the policy or custom caused [the] constitutional violation." *Napier v. Madison Cnty.*, 238 F.3d 739, 743 (6th Cir. 2001).

Failure to adequately train or supervise officers can rise to the level of a *de facto* unconstitutional policy or custom if a plaintiff can show: "(1) the training or supervision [] was

inadequate to the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (quoting *Board of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Loggins v. Franklin Cnty.*, 218 F. App'x 466, 473 (6th Cir. 2007) (quotation omitted).

### 1. § 1983 Claim Against the County

The County argues it is entitled to summary judgment on Plaintiff's § 1983 claim because, setting aside the question of whether Plaintiff even suffered a constitutionally-cognizable injury, Plaintiff cannot show the County had an official unconstitutional policy or custom which was responsible for the injury, or that the County was "deliberately indifferent" to the rights of Plaintiff and similarly-situated individuals. The Court agrees.

Plaintiff has produced no evidence whatsoever of any unconstitutional "policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the County's] officers" which led to alleged violation of her constitutional rights. *See Praprotnik*, 485 U.S. at 121. At most, there is the statement of Sergeant Brown that "the Bradley County Criminal Justice Center had a rule against allowing animals . . . into the courthouse" (Court File No. 12, ¶ 3). However, Sergeant Brown's reference to the Bradley County Criminal Justice Center's general "rule" against animals in the courthouse falls short of establishing there was an official policy, "adopted and promulgated"

9

by County officers, prohibiting disabled persons from bringing service animals into the courthouse. Moreover, County Attorney Joseph Byrd has given uncontroverted testimony that "Bradley County did not at any time have an official policy prohibiting disabled persons with service animals into its courthouses" (Court File No. 13, ¶ 4).

Likewise, Plaintiff has presented no evidence of an "unofficial" policy that, although not formally adopted by County officers, is a "widespread practice . . . so permanent and well settled as to constitute a custom or usage with the force of law." *See Monell*, 436 U.S. at 691. Indeed, not only is there no evidence of such a "widespread practice," there is no evidence of any other incident in the history of Bradley County wherein a disabled individual with a service animal has been turned away from or delayed entry into a courthouse. In short, there is no evidence of an unconstitutional policy, official or unofficial, to support Plaintiff's § 1983 claim against the County.

Similarly, Plaintiff has failed to produce evidence tending to show a *de facto* unconstitutional policy or custom arising from the County's failure to adequately train or supervise its officers. To demonstrate a § 1983 violation based upon failure to train, Plaintiff must show, *inter alia*, the County was "deliberately indifferent" to the rights of disabled individuals such as herself. *See Ellis*, 455 F.3d at 700. To prove deliberate indifference, "[a plaintiff] must show prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005).

Here, as already noted, Plaintiff cannot point to any "prior instances of unconstitutional conduct" to demonstrate the County has "ignored a history of abuse"toward individuals dependent on service animals, or even disabled individuals generally. *See id.* Plaintiff's complaint cites

*Tennessee v. Lane*, 541 U.S. 509 (2004) in support of the proposition the County was "on notice of the needs [sic] to accommodate access by disabled persons to all court buildings" (Court File No. 1, ¶ 23), but this case cannot carry the water Plaintiff seeks to fill it with. In *Lane*, the Supreme Court held Title II of the ADA, insofar as it "applies to the class of cases implicating the fundamental right of access to the courts," does not exceed Congress' authority under § 5 of the Fourteenth Amendment. *Id*. at 533-34. In other words, the Court held states are not exempt from ADA requirements when physical access to the courts is at issue. However, holding as a general principle that the ADA is applicable with respect to courthouses is a far cry from placing municipalities on notice of an exhaustive set of particular accommodations and policies to be proactively implemented with respect to every conceivable disability. If *Lane* were read the way Plaintiff suggests, as putting all municipalities on notice of a history of abuse with respect to all particular disabilities, the "stringent standard" of deliberate indifference would be reduced to less than a mere formality; it would always be satisfied, thus it would be no standard at all. *See Ellis*, 455 F.3d at 700. The Court cannot agree with Plaintiff that *Lane* put the County on notice of a history of abuse towards individuals with service animals, and of deficient training in this area. There being no other evidence the County was deliberately indifferent to the rights of Plaintiff and similarly-situated individuals, the Court finds Plaintiff cannot establish § 1983 liability under a failure to train theory.

Since Plaintiff can show neither an unconstitutional policy or custom, nor actionable failure to train or supervise its officers, the Court determines the County is entitled to judgment as a matter of law on Plaintiff's § 1983 claim.

### 2. § 1983 Claim Against Sergeant Brown

11

Sergeant Brown raises a qualified immunity defense to Plaintiff's § 1983 claim against him. The qualified immunity doctrine shields government officials performing discretionary actions from civil damages liability as long as their actions reasonably could have been thought consistent with the rights they are alleged to have violated. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Even if a government official deprives a plaintiff of a federal right, "qualified immunity will apply if an objective reasonable officer would not have understood, by referencing clearly established law, that his conduct was unlawful." *Painter v. Robertson*, 185 F.3d 557, 567 (6th Cir. 1999). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The plaintiff bears the burden of showing a defendant is not entitled to qualified immunity. *See Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

To determine if qualified immunity applies, courts employ a two-part test. First, courts determine whether the facts, taken in a light most favorable to the party alleging injury, show an officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, if a Constitutional right was violated, courts must determine "whether the violation involved a clearly established constitutional right of which a reasonable person would have known." *Peete v. Metro. Gov't of Nashville and Davidson Cnty.*, 486 F.3d 217, 219 (6th Cir. 2007) (citation omitted); *see also Saucier*, 533 U.S. at 201. This second inquiry looks closely at the particular context of the case rather than asking whether a right was clearly established "as a broad general proposition." *Saucier*, 533 U.S. at 201. If a plaintiff fails to establish either of these prongs, she has failed to carry her burden and judgment is appropriate for the defendant. *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). Since the failure of either prong is dispositive in favor of a defendant, the Court may address either prong first. *See Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

Case 1:10-cv-00207-CLC-SKL   Document 26   Filed 09/26/11   Page 12 of 15   PageID #: 144

Because qualified immunity shields reasonable conduct, even when it is mistaken, the Sixth Circuit has at times added a third line of inquiry to the traditional two-part test: "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Peete*, 486 F.3d at 219; *cf. Everson v. Leis*, 556 F.3d 484, 494 n.4 (6th Cir. 2009) (stating regardless of whether the two-prong or the three-prong test is applied, "the essential factors considered are [] the same"). "[I]f officers of reasonable competence could disagree [on the legality of the action], immunity should be recognized." *Malley*, 475 U.S. at 341.

Here, even assuming Sergeant Brown's conduct violated Plaintiff's constitutional rights, Plaintiff cannot show the violation "involved a clearly established constitutional right of which a reasonable person would have known." *Peete* 486 F.3d at 219. Inquiry into this second *Saucier* prong requires the Court to look beyond the right of access to the courts in the abstract, to determine whether Sergeant Brown, "in light of the specific context of the case, not as a broad general proposition," would have known his conduct was violative of Plaintiff's rights. *See Saucier*, 533 U.S. at 201. The Court concludes he would not have.

It is uncontested Sergeant Brown had never encountered a service animal attempting to enter the courthouse before the date in question. It is also uncontested that prior to this incident, Bradley County did not have a formal policy or training procedure regarding admission of service animals to public facilities. Faced with what was to him the novel occasion of someone attempting to bring an animal into the courthouse, Sergeant Brown sought to consult with a higher authority before permitting Plaintiff and her service animal to enter. Mindful that "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer

13

confronts," *id*. at 205, the Court cannot conclude Sergeant Brown would have known his causing Plaintiff to wait while he sought approval from Judge Randolph would have violated Plaintiff's clearly established constitutional rights. Moreover, Plaintiff has cited no case law and put forward no "evidence to indicate that what [Sergeant Brown] did was objectively unreasonable in light of the clearly established constitutional rights." *Peete*, 486 F.3d at 219.

Because Plaintiff has not met her burden of showing any violation she suffered "involved a clearly established constitutional right of which a reasonable person would have known," *id.*, the Court determines Sergeant Brown is entitled to qualified immunity. Accordingly, summary judgment is proper for Sergeant Brown on Plaintiff's § 1983 claim.

### C. State Law Claims

Plaintiff asserts various state law claims against Defendants. The Court finds dismissal without prejudice is proper for these claims. As state law claims brought in a federal-question case, the claims can only be heard by the Court through the exercise of supplemental jurisdiction, pursuant to 28 U.S.C. § 1367. The exercise of federal supplemental jurisdiction is discretionary. District courts may decline to exercise supplemental jurisdiction over a state law claim if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

Here, the Court has dismissed all claims over which it has original jurisdiction, thus the third rationale of § 1367(c) applies. The Sixth Circuit "has expressed a strong policy in favor of

14

dismissing" state law claims when all federal claims over which the district court had original jurisdiction have been dismissed. *Staggs v. Ausdenmoore*, No. 92-3172, 1993 WL 131942, *5 (6th Cir. April 27, 1993). Accordingly, the Court will dismiss without prejudice all state law claims against Defendants.

IV. **CONCLUSION**

For the reasons stated above, the Court will **GRANT IN PART** Defendants' motion for summary judgment (Court File No. 10). The Court will **GRANT** summary judgment for all Defendants on Plaintiff's ADA and § 1983 claims. The Court will **DISMISS WITHOUT PREJUDICE** all state law claims.

**An Order shall enter.**

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

15

Case 1:10-cv-00207-CLC-SKL   Document 26   Filed 09/26/11   Page 15 of 15   PageID #: 147